IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS RADFORD #156846,      )
      )
      Plaintiff,      )
      )
      v.      )      CASE NO. 2:10-CV-193-TFM
      )      [WO]
      )
CORRECTIONAL MEDICAL      )
SERVICES, et al.,      )
      )
      Defendants.      )

**MEMORANDUM OPINION AND ORDER**

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Thomas Radford ("Radford"), an indigent state inmate, challenging the adequacy of medical treatment for the alleged diabetes during his incarceration at the Ventress  Correctional Facility ("Ventress"). Radford names as defendants in this cause of action Correctional Medical Services ("CMS"), Dr. John Peasant, the Medical Director for Ventress, and Ms. Nettie Burks, Health Services Administrator at Ventress,[1] and Dr. Ronald Cavanaugh[2] (collectively "Defendants").  Radford

---

[1]  In the Special Report, Ms. Burks states that "[d]uring his incarceration at Ventress, Mr. Radford did not submit any grievance of any kind or otherwise utilized [sic] the grievance process to bring any complaints to the attention of the medical staff." Furthermore, Ms. Burks states that her position at Ventress is "almost exclusively 'management'" related and that she had no "interaction with Mr. Radford during his incarceration at Ventress". *Special Report of Defendants CMS, Dr. John Peasant and Nettie Burks -Doc. No. 26-2* at 3.

[2]  In his Special Report, Dr. Cavanaugh adopts the Special Report of his Co-defendants and explains that he is a Senior Psychologist for the Alabama Department of Correction and that he does not know Plaintiff nor has he "had any contact with him." *Special Report of Dr. Ronald*

seeks monetary damages and declaratory and injunctive relief for the alleged violations of his constitutional rights.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Radford's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as motions for summary judgment.  *Order of March 18, 2010 - Doc. No. 10*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions and the evidentiary materials filed in support thereof, the court concludes that the defendants' motions for summary judgment are due to be GRANTED.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary

---

*Cavannaugh Doc. 30-1* at1.

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and,

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11ᵗʰ Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of

---

therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Flie is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th

4

Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

5

there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Radford fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

Radford asserts that the named defendants acted with deliberate indifference by failing to provide him adequate medical treatment for his diabetes.  *Complaint - Doc. No. 1* at 1. Specifically, Radford claims that the defendants acted with deliberate indifference by denying

him the ability to see a free world doctor as was ordered by Montgomery County Circuit Court Judge Johnny Hardwick at a hearing held on January 15, 2008. *Complaint - Doc. No. 1* at 1 and 3.; *Exh.* 1 at 1-3.[4]  The defendants argue that Radford fails to demonstrate deliberate indifference because he has not been denied medical treatment, but rather that [d]espite repeated testing over an extended period of time, there is no objective medical data or information demonstrating that Plaintiff is a diabetic or requires any medical treatment for diabetes. *Special Report of Defendants CMS, Dr. John Peasant and Nettie Burks -Doc. No. 26* at 9.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal

---

[4]   To the extent that the plaintiff bases his claim on the defendants alleged failure to act in accordance with the order of a state court, he is likewise entitled to no relief.  It is well settled that 42 U.S.C. § 1983 governs only violations of rights secured by federal laws.  *See Golden States Transit Corporation v. Los Angeles*, 493 U.S. 103 (1989); *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990).  Remedial orders of state or federal courts do not create rights enforceable under the Constitution or laws of the United States.  *See Green v. McKaskle*, 788 F.2d 1116 (5th Cri. 1986); *see also De gidio v. Pung*, 704 F.Supp. 922 (D.C. Minn. 1989) (agreeing with *McKaskle*), *aff'd on unrelated grounds*, 920 F.2d 525 (8th Cir. 1990).  In light of the foregoing, the court concludes that the state court order on which the plaintiff bases his complaint does not establish rights which are enforceable under 42 U.S.C. § 1983.  Consequently, the plaintiff is entitled to no relief from this court on that basis.

quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge

of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a

delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient
> to form the basis of a claim for deliberate indifference is well
> settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285,
> 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543
> (11th Cir.1995). Instead, something more must be shown.
> Evidence must support a conclusion that a prison physician's
> harmful acts were intentional or reckless. *See Farmer v. Brennan,*
> 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811
> (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996)
> (stating that deliberate indifference is equivalent of recklessly
> disregarding substantial risk of serious harm to inmate); *Adams,* 61
> F.3d at 1543 (stating that plaintiff must show more than mere
> negligence to assert an Eighth Amendment violation); *Hill v.
> Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28
> (11th Cir.1994) (recognizing that Supreme Court has defined
> "deliberate indifference" as requiring more than mere negligence
> and has adopted a "subjective recklessness" standard from criminal
> law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating
> "deliberate indifference" is synonym for intentional or reckless
> conduct, and that "reckless" conduct describes conduct so
> dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need ...,

Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to

that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser

Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate

indifference, an inmate is required to establish "an objectively serious need, an objectively

insufficient response to that need, subjective awareness of facts signaling the need and an actual

inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d

at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to

the prisoner).   Thus, deliberate indifference occurs only when a defendant "knows of and

disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists and

he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164,

168 (4ᵗʰ Cir. 1998) (defendant must have actual knowledge of a serious condition, not just

knowledge of symptoms, and ignore known risk to serious condition to warrant finding of

deliberate indifference).   Furthermore, "an official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, ... the Supreme Court has ... emphasized that not 'every claim by a
> prisoner that he has not received adequate medical treatment states a violation of
> the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888
> F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so
> grossly incompetent, inadequate, or excessive as to shock the conscience or to be
> intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).
> Mere incidents of negligence or malpractice do not rise to the level of
> constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical
> malpractice does not become a constitutional violation merely because the victim
> is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical
> malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871
> F.2d at 1033 (mere medical malpractice does not constitute deliberate
> indifference).  Nor does a simple difference in medical opinion between the
> prison's medical staff and the inmate as to the latter's diagnosis or course of
> treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871
> F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4ᵗʰ Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11ᵗʰ Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and

internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

The affidavit filed by Dr. John Peasant, who personally evaluated Radford as a patient on numerous occasions, directly addresses Radford's concern that he has diabetes. A thorough review of the evidentiary materials filed in this case demonstrates that this affidavit is corroborated by the objective medical records compiled contemporaneously with treatment provided to Radford relative to the instant claim of deliberate indifference. Dr. Peasant

addresses Radford's allegations, in pertinent part, as follows:

3.  Having reviewed certain excerpts from Mr. Radford's medical records which are being submitted as an exhibit to Ms. Burk's Affidavit, I am generally familiar with Mr. Radford's medical history and conditions and have seen and evaluated him as a patient on numerous occasions since his arrival at Ventress.

4.  Beginning in approximately late November or early December of 2009, Mr. Radford  voiced concerns/and or complaints to me that he maybe diabetic.  In light of this concern, I elected to pursue a progressive series of tests to determine if Mr. Radford was, in fact, diabetic and/or required some form of diabetic therapy.  According to Mr. Radford's medical records, this was not the first occasion that Mr. Radford had expressed this concern, which he had expressed during a chronic care clinic *at another facility* prior to his incarceration at Ventress. (CMS018).  Likewise, on other medical provider noted in May of 2008 that Mr. Radford was "convinced he is diabetic [though] all fingersticks . . . nondiabetic."  (CMS056)

5.  After these concerns about diabetes were raised with me by Mr. Radford, I instructed Mr. Radford to have his blood sugar levels checked by the medical staff, twice daily at approximately 3:00 a.m. and 3:00 p.m. (CMS028, 38).  These particular times were chosen as to hopefully ensure the accuracy of the results of the blood sugar testing.  While I customarily only order this blood sugar testing over the period of 2 weeks, I was required to actually have the medical staff conduct this blood sugar testing for Mr. Radford through the first of January, 2010, because Mr. Radford often failed to appear at the health care unit to have his blood sugar tested at appointed times.

6.  Over the course of approximately one month (between December 4, 2009 and January 3, 2010), Mr. Radford appeared at the health care unit on approximately 28 occasions.  As indicated in the record of blood sugar testing results included in his medical records (CMS007-009), Mr. Radford's blood sugar levels were clearly stable and well within normal limits (i.e. less than 120) on all but one occasion.  However, on this one occasion, his blood sugar levels were so abnormal that they must deemed in accurate and unreliable, especially, given our other findings.  In short, the blood sugar testing conducted with regard to Mr. Radford between December 4, 2009 and January 3, 2010, indicated that he maintained a fairly stable blood sugar level which would not warrant a diagnosis of diabetes or treatment for diabetes.

7.  While the blood sugar/finger-stick testing does provide a snapshot of a patient's blood sugar levels, these values can fluctuate greatly and only offer a

small amount of information regarding the condition of a potential or actual diabetic patient. However, a lab test known as a "Hemoglobin A1c" value provides a much more accurate and comprehensive picture of a patient's glucose /insulin management. For example, a diabetic inmate's Hemoglobin A1c values are the true indicator of the management of their diabetic condition. Blood samples are drawn from diabetic inmates at Ventress at regular intervals (no less frequently than quarterly) in order to test their Hemoglobin A1c values. I also ordered Mr. Radford to undergo a Hemoglobin A1c test on December 3, 2009. (CMS006).

8. Mr. Radford's results from the December 4, 2009, blood sample indicated a Hemoglobin A1c level of 5.1, which was well within the normal limits. (CMS018-019). At a subsequent chronic care clinic on October 15, 2008, Mr. Radford's Hemoglobin A1c level remained at the normal level of 5.2. (CMS023). Moreover, lab results dated April 25, 2008, indicate Mr. Radford demonstrated a Hemoglobin A1c level of 5.2. (CMS128). Additionally, Mr Radford underwent numerous urinalyses - all of which were negative for any indication of diabetic symptoms such as the presence of blood or glucose in his urine. (CMS 114, 120. 129).

9. In short, I did not identify any justifiable, objective medical basis to diagnose Mr. Radford with diabetes. In my experience, if Mr. Radford were in fact diabetic, one or more of those test results would have indicated some abnormality, which they did not. While Mr. Radford did receive treatment for high blood pressure and asthma during his incarceration at Ventress, he did not receive treatment for diabetes because Mr. Radford was not diabetic during his incarceration at Ventress.

*Special Report of Defendants CMS, Dr. John Peasant and Nettie Burks -Doc. No. 26-1* at 1-4.

Under the circumstances of this case, the court concludes that the course of testing undertaken by defendant Dr. Peasant in addressing Radford's concern that he had diabetes did not violate his constitutional rights. It is undisputed that Radford underwent multiple methods of testing for diabetes, including month-long blood test monitoring, and multiple lab work-ups of his "'Hemoglobin A1c' values" and "numerous urinalyses." On the basis of this medical evidence Dr. Peasant concluded there was not "any justifiable, objective medical basis to

diagnose Mr. Radford with diabetes." *Doc. No. 26-1* at 2-4. Thus, the medical care Radford received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Indeed, the allegations presented by Radford simply fail to establish deliberate indifference by the defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

Furthermore, based on well settled law cited herein, Radford's mere desire for a different mode of medical testing does not constitute deliberate indifference. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Radford's concern that he has diabetes. Consequently, summary judgment is due to be granted in favor of defendants. *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is ORDERED that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

      Done this 18th day of March, 2013.


        /s/ Terry F. Moorer
      TERRY F. MOORER
      UNITED STATES MAGISTRATE JUDGE